NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 08a0380n.06
Filed: June 26, 2008

No. 07-3816

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

DAWN KELLEY; CHYNA ALLEN, a minor, )
)
    Plaintiffs-Appellants, )
)
v. )
)
WILLIAM McCAFFERTY, Police Chief of the City )
of Steubenville; DOMINIC MUCCI, Mayor of )
Steubenville; OFFICER JASON HANLIN, )
Steubenville Police Department; OFFICER SEAN )
EXTEROVICH, Steubenville Police Department; )
OFFICER JOHN SOWERS, Steubenville Police )
Department; JOHN LEMAL, Steubenville Police )
Department; and JOHN DOE I, )
)
    Defendants-Appellees. )
_____ )

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE SOUTHERN
DISTRICT OF OHIO

BEFORE: MARTIN, GRIFFIN, and GIBSON, Circuit Judges.[*]

    GRIFFIN, Circuit Judge.

    Plaintiffs appeal an order of the district court granting summary judgment in favor of

defendants on plaintiffs' Fourth Amendment damage claims brought pursuant to 42 U.S.C. § 1983.

We affirm.

I.

_____

    [*]The Honorable John R. Gibson, Senior Circuit Judge, United States Court of Appeals for
the Eighth Circuit, sitting by designation.

On December 23, 2004, Officer Jason Hanlin of the Steubenville Police Department, seeking a search warrant, tendered an affidavit to search the residence of plaintiff Dawn Kelley at 112 McDowell Avenue, Steubenville, Ohio to the Steubenville Municipal Court. The affidavit set forth the following factual basis in support of the officer's belief that the residence was being used for drug trafficking:

> On 12-22-04, Steubenville Police Narcotics Detectives met with a reliable police confidential informant in regards to purchasing crack cocaine from Dawn Kelly. The informant has a history of providing reliable information and has participated in numerous controlled purchases.
>
> On 12-22-2004, Officers provided the informant with forty dollars in marked currency and searched the informant prior to any activity finding no contraband. The informant was fitted with an electronic transmitter for audio surveillance. Officers were able to view the informant enter 112 McDowell Avenue and were able to hear the informant make contact with Dawn Kelly. The informant exchanged forty dollars for crack cocaine. The informant was also able to view Ms. Kelly's crack cocaine supplier deliver further crack cocaine to the residence. Following the controlled purchase the informant provided officer with the narcotic which tested presumptive positive for cocaine base.

The affiant additionally swore:

> With the above information and transactions, Officers believe there is further crack cocaine within 112 McDowell Avenue.
>
> The affiant request [sic] a no-knock and/or day/night warrant due to the fact that he believes there to be a risk of serious [sic] to officers. Officers are not aware of the number of subjects inside the residence nor the identity of the subjects inside. The affiant's experience shows that drug traffickers often possess firearms to protect their currency and/or narcotics.

Judge Daniel Spahn of the Steubenville Municipal Court signed the requested search warrant at 10:22 p.m. At approximately 11:50 p.m. that same evening, Steubenville Police Officers Hanlin,

Sowers, Lemal, Exterovich, and Shimon executed the warrant at plaintiffs' residence, entering without knocking and with weapons drawn. Plaintiffs assert, and defendants deny, that upon entry the officers aimed their weapons at Kelley and her minor daughter Chyna Allen.

The officers secured plaintiffs Kelley and Allen and conducted a search of the residence. During this search, the officers discovered crack cocaine and drug paraphernalia in the house. Kelley was ultimately arrested for possession of drug paraphernalia. On March 7, 2007, the Jefferson Court of Common Pleas Grand Jury returned an indictment charging Kelley with one count of trafficking in drugs, one count of possession of drug paraphernalia, and one count of possession of drugs.

At the time of the incident, the City of Steubenville was subject to a consent decree. The United States Department of Justice and the City of Steubenville entered into this decree on September 3, 1997. This decree required the City to develop and implement a training policy for its officers, develop an internal affairs policy wherein there exists no discretion over whether to investigate a complaint, and track all uses of force and warrantless searches and seizures. The United States and the City were required to select an independent auditor who would review all internal affairs reports, use of force reports, and warrantless search and seizure reports; they eventually selected Charles D. Reynolds for this role. The auditor was also required to review incidents classified as "officer only complaint and arrest," a category that includes the underlying incident. The consent decree provided that it could be terminated "[a]t any time after <u>both</u> five years [had] elapsed since the date of entry of [the] Decree, <u>and</u> substantial compliance [had] been maintained for no less than two years . . . ." (emphasis in original). The auditor eventually

determined that the City was in substantial compliance with the terms of the consent decree, and the United States District Court for the Southern District of Ohio ordered the termination of the decree on March 4, 2005.

Plaintiffs filed the instant action, claiming Fourth Amendment violations based upon allegations of: (1) an unlawful search made pursuant to an invalid warrant, and (2) an unreasonable search and seizure. Plaintiffs additionally asserted two claims of municipal liability, alleging improper training and discipline of police officers by the City, as well as maintaining a policy that encouraged false arrest and falsification of documents. Defendants' motion for summary judgment on all claims was granted by the district court on May 3, 2007. This timely appeal followed.

II.

We review a district court's decision granting summary judgment de novo. *Smith Wholesale Co., Inc. v. R.J. Reynolds Tobacco, Inc.*, 477 F.3d 854, 861 (6th Cir. 2007) (citing *Kessler v. Visteon Corp.*, 448 F.3d 326, 329 (6th Cir. 2006)). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Id*. (citing FED. R. CIV. P. 56(c)). The evidence must be viewed in the light most favorable to the nonmoving party, giving that party the benefit of all reasonable inferences. *Id*. (citing *Kessler*, 448 F.3d at 329). "However, 'the nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), it must present significant probative

evidence in support of its complaint to defeat the motion for summary judgment.'" *Id*. (quoting *Expert Masonry, Inc. v. Boone County, Ky.*, 440 F.3d 336, 341 (6th Cir. 2006)). "'A mere scintilla of evidence is insufficient; there must be evidence on which the jury could reasonably find for the non-moving party.'" *Id*. (quoting *Kessler*, 448 F.3d at 329).

## III.

On appeal, plaintiffs argue first that the December 23, 2004, warrant was unlawful because it was not supported by probable cause. Specifically, plaintiffs contend that "[t]he District Court erred by finding that no genuine issues of material fact existed regarding the date of the execution of the Affidavit for the Search Warrant, the existence of the Affidavit for the Search Warrant and the Search Warrant." Plaintiffs, however, fail to cite any authority in support of this conclusory assertion. Indeed, plaintiffs' only support for the above premise is an approximately one-page recitation of the definition of probable cause, and the supposition that the determination of probable cause is a jury question. Such meager support cannot alone sustain plaintiffs' claims. As we have repeatedly observed, "it is a settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *United States v. Villareal*, 491 F.3d 605, 611 (6th Cir. 2007) (quoting *United States v. Johnson*, 430 F.3d 383, 397 (6th Cir. 2005)). We therefore conclude that plaintiffs have abandoned this issue.

Nevertheless, assuming arguendo that plaintiffs raised this issue properly, we conclude that the district court did not err in finding the warrant valid. A warrant is valid when the supporting affidavit provides a "substantial basis" for the issuing magistrate to believe "there is a fair probability

that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983); *United States v. King*, 227 F.3d 732, 742 (6th Cir. 2007). In reviewing the sufficiency of a supporting affidavit, we consider the "totality of the circumstances." *United States v. Allen*, 211 F.3d 970, 972 (6th Cir. 2000) (en banc) (citing *Gates*, 462 U.S. at 230-32). Further, we are required to give "great deference" to the issuing magistrate's probable cause determination. *United States v. Smith,* 510 F.3d 641, 652 (6th Cir. 2007). This determination, in turn, requires the magistrate to "'make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying the hearsay information,' probable cause exists." *King*, 227 F.3d at 740 (quoting *Gates*, 462 U.S. at 238). Indeed, an "issuing magistrate's discretion should only be reversed if it was arbitrarily exercised." *Allen*, 211 F.3d at 973.

Here, all reasonable jurors would conclude that the issuing magistrate had a substantial basis for finding that the affidavit established probable cause. The affidavit was supported by evidence obtained from a confidential informant who had previously provided reliable information to law enforcement. The informant was searched prior to his entry into Kelley's residence, given $40 in marked currency, and sent to Kelley's house to purchase narcotics. The informant returned with a substance that was revealed to be cocaine base. During the transaction, the informant was fitted with an electronic transmitter for audio surveillance purposes. Plaintiffs contend the audio recording is too garbled to clearly identify Kelley. Even assuming this to be the case, there was still overwhelming evidence to demonstrate a probability that narcotics were being sold at Kelley's

residence. We therefore conclude that the district court did not err in granting summary judgment in favor of defendants on this claim.

IV.

Plaintiffs also contend that the search of the residence was unconstitutional. Even when a warrant is supported by probable cause, the subsequent search may still be challenged. *Baranski v. Fifteen Unknown Agents*, 452 F.3d 433, 445 (6th Cir. 2006) (en banc). Kelley and Allen contend that the police utilized an unreasonable amount of force in securing the premises. Again, plaintiffs provide scant support for this claim, leaving it to the court to determine what aspects of the search would support a jury finding of excessive use of force. Only one factual allegation is argued explicitly: plaintiffs' claim that the police, upon entry into the residence, aimed their weapons at Kelley and Allen. This fact is disputed by defendants, but, because we must view the facts in the light most favorable to plaintiffs, we must assume that the police did, in fact, aim their weapons at Kelley and Allen. However, a reasonable juror could not determine that this action, in and of itself, constitutes an unreasonable search and seizure. Because the police believed themselves to be entering an active drug house where weapons may be present, and with an unknown number of individuals inside, it was not unreasonable for them to have their weapons drawn upon entry. Further, plaintiffs allege that weapons were pointed at Kelley only until she lay on the floor, which she did quickly. For these reasons, we conclude the district court did not err in granting summary judgment in favor of defendants.

Plaintiffs also contend that they suffered a Fourth Amendment injury by the officers' failure to "knock and announce" their presence before their execution of the warrant. Again, plaintiffs maintain that there exists a genuine issue of material fact that precludes summary judgment regarding this issue. However, plaintiffs failed to raise this issue in the district court. Absent exceptional circumstances, we do not normally address issues not presented to the district court. "In the interests of judicial economy and the finality of judgments, and mindful of our role as an appellate court, we have declined to review arguments not presented to the district court in the first instance." *Taft Broadcasting Co. v. United States*, 929 F.2d 240, 244 (6th Cir. 1991) (quoting *Sigmon Fuel Co. v. Tennessee Valley Authority*, 929 F.2d 240, 244 (6th Cir. 1985)).

Moreover, regarding the merits of this issue, we note that the police specifically applied for and received a "no knock" warrant. While drug raids do not provide a per se exception to the knock and announce rule, an exception is recognized when police have a "reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be dangerous or futile, or that it would inhibit the effective investigation of the crime by, for example, allowing the destruction of evidence." *Richards v. Wisconsin*, 520 U.S. 385, 394 (2007). The requirements of reasonable suspicion are "not high" and are less demanding than that of probable cause. *Id*. at 394-95. We conclude that this standard was satisfied in the instant case, because the "no knock" warrant was justified based on the lack of knowledge concerning the residence's occupants, the potential for destruction of evidence, and the general tendency for firearms to be present where drugs are sold.

V.

Finally, plaintiffs argue that the City of Steubenville violated their rights by failing to train their police force adequately and by maintaining a policy or practice that condoned and/or authorized false arrests and falsification of documents. A city may be held liable when it fails to train its employees and a constitutional violation results from this failure to train. *City of Canton v. Harris*, 489 U.S. 378, 387 (1989). We conclude that the district court correctly ruled that plaintiffs' failure to train claim failed because there was no constitutional violation by the individuals supervised. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986). Likewise, in order for plaintiffs' injurious practice or policy claim to succeed, they must establish a causal link between their constitutional injury and the alleged wrongful policy. Again, as there is no constitutional deprivation, this claim too must fail.

VI.

For the reasons stated above, we affirm the judgment of the district court.